UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SHANNON KOHLER

VERSUS

PAT ENGLADE, ET AL

CIVIL ACTION

NO. 03-857-JJB

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

Defendant, Detective Christopher Johnson, brings a motion for summary judgment. (Doc. 55). Plaintiff, Shannon Kohler, brings a cross motion for summary judgment. (Doc. 58). Oral argument with respect to these motions is not necessary. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331.

## Background

Plaintiff brought suit alleging that his constitutional rights were violated by the seizure of his DNA. This Court originally granted summary judgment in favor of all of the defendants,[1] finding, among other things, that Detective Johnson's warrant affidavit in support of seizing Mr. Kohler's DNA, when examined in conjunction with the criteria in the FBI profile, was supported by probable cause. Plaintiff appealed this Court's judgment. While the Fifth Circuit affirmed the dismissal of plaintiff's *Franks* claim based on alleged misrepresentations and/or omissions of exculpatory information in the warrant affidavit, it found that the affidavit was *not* supported by probable cause. Thus, the Fifth Circuit found that plaintiff did have a viable *Malley* claim based on Detective Johnson's submission of a facially invalid warrant affidavit.[2] However, because

---

[1] *See* Ruling, doc. 22.
[2] Plaintiff brought two distinct claims against Detective Johnson.
  The first claim, referred to by the Fifth Circuit as plaintiff's *Malley* claim, revolved around the facial validity of the warrant affidavit submitted by Detective Johnson to Judge Anderson. In *Malley v. Briggs*, 475 U.S. 335 (1986), the Supreme Court held that a defendant who submits a facially invalid warrant affidavit (one that fails to

1

Detective Johnson did not assert qualified immunity in his motion for summary judgment, the Fifth Circuit did not consider whether the Detective was entitled to such immunity on plaintiff's *Malley* claim.[3]

Thus, as the Fifth Circuit has found that the warrant affidavit facially invalid, the only question left for this Court is whether Detective Johnson is protected by qualified immunity. [4] In the Notice to Counsel, we stated that this Court would determine the issue of qualified immunity on cross motions for summary judgment and if the Detective

---

set forth probable cause) and a warrant is nonetheless issued, is required to exercise "reasonable professional judgment." *Id*. at 346. A defendant will not be qualifiedly immune from suit for the submission of a facially invalid warrant affidavit "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue…". *Id*. at 341. The Fifth Circuit found the warrant affidavit in this case on its face lacked sufficient information to establish probable cause.

Plaintiff's second claim, referred to as his *Franks* claim, involved plaintiff's allegations that Detective Johnson withheld material exculpatory information from the warrant affidavit. The Mandate affirms this Court's dismissal of plaintiff's *Franks* claim against Detective Johnson. As the Fifth Circuit explained:

> Pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d (1978), a Fourth Amendment violation may be established where an officer intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application. Likewise, the intentional or reckless omission of material facts from a warrant application may amount to a Fourth Amendment violation. *See Hale v. Fish*, 899 F.2d 390, 400 n.3 (5th Cir. 1990).

Mandate, doc. 34, page 12.
The Fifth Circuit reasoned that to determine a constitutional violation under *Franks*, the omitted information would normally be inserted into the warrant affidavit to determine the materiality of that information. However, in this case "where the warrant affidavit is already lacking in probable cause, any reconstructed affidavit that includes the omitted exculpatory information would necessarily lack probable cause as well, regardless of the materiality of the omitted information." Doc. 34, page 13. The Fifth Circuit stated that "*Franks* itself was confined to providing a mechanism for challenging a search warrant that was not supported by probable cause but that, due to the inclusion of deliberately falsified allegations in the warrant affidavit, appeared to be supported by probable cause," concluded that the principles of *Franks* were inapplicable to facially invalid warrants, and affirmed this Court's dismissal of plaintiff's *Franks* claim. Doc. 34, pages 13-14.

Thus, as this Court indicated in its Notice to Counsel, the only claim before it is plaintiff's *Malley* claim. *See* Notice to Counsel, doc. 54.

[3] Mandate, doc. 34, page 12 n. 8.
[4] This Court believes that the question of qualified immunity in this case is a question appropriate for summary judgment. To determine the issue of qualified immunity, this Court must only consider the information set out in the warrant affidavit – information that is not subject to factual dispute. As the Fifth Circuit explained in *Jennings v. Joshua Independent School District*, 877 F.2d 313, 318 n.2 (5th Cir. 1989) when affirming a legal determination of qualified immunity by the lower court: "Since the *Malley* test is objective rather than subjective, and since the record below developed sufficient undisputed facts, the issue of [defendant's] immunity under *Malley* is one for the court to decide as a matter of law."

was found not to be immune, a trial on the issue of damages would be held on Tuesday, June 9, 2009.

## Analysis

The Supreme Court set out the standard for qualified immunity in cases where the affiant presents a facially invalid warrant affidavit (an affidavit that fails to set forth probable cause) in *Malley v. Briggs*.[5] There, the Court stated:

> Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.[6]

As the Court explained: "The analogous question...is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."[7]

Thus, the Court required a defendant to exercise "reasonable professional judgment"[8] and held that "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost."[9] In *Ellison v. Balinski*,[10] the court found a police officer's affidavit was so lacking in probable cause that the officer was not entitled to qualified immunity. There, warrant affidavit failed to state the crime the officer believed had been committed (mortgage fraud) and failed to set forth that mortgages related to the properties to be searched even existed. The court concluded that the warrant "affidavit was 'so lacking in

---

[5] 475 U.S. 335 (1986).
[6] *Id.*, at 341 (1986).
[7] *Id.*, at, 345 (1986).
[8] *Id.*, at 346 (1986).
[9] *Id.*, at, 345 (1986).
[10] 2009 WL 497398 (E.D. Mich. 2009).

probable cause" that mortgage fraud has been committed…that 'official belief in the existence of probable cause…is unreasonable.'"[11]

In our original ruling, we found that the facts as set forth in the warrant affidavit, "when examined in conjunction with the criteria in the FBI profile, were sufficient to support a finding of probable cause."[12] However, the Fifth Circuit found that "Judge Anderson issued the seizure warrant based solely on Detective Johnson's affidavit"[13] and therefore information in the FBI profile was irrelevant.[14] In its Mandate, the Fifth Circuit found many deficiencies in the warrant affidavit.[15] First, the Fifth Circuit noted

---

[11] *Id*. at *7 (quoting Mills v. City of Barbourville, 389 F.3d 568, 577 (6th Cir. 2004)).

[12] Doc. 22, page 9.

[13] Mandate, doc. 34, page 7.

[14] "What Detective Johnson knew but failed to tell Judge Anderson is irrelevant to the question of whether Detective Johnson's affidavit provided Judge Anderson with a substantial basis for determining the existence of probable cause." *Id*., at 10. Plaintiff also points out that Detective Johnson stated in his deposition that although he took the warrant affidavit to Judge Anderson, he did not think Judge Anderson questioned him about the affidavit. Deposition of Detective Johnson, doc. 58-5, page 1.

[15] The warrant affidavit reads in its entirety as follows:

> Affiant says that he has probable cause to believe the above-listed thing to be seized [Kohler's DNA] is relevant evidence based upon the following facts:
>
> On 09/23/01, Ms. Gina Green was murdered in her home at 2152 Stanford Ave. On 05/31/02, Ms. Charlotte Pace was murdered in her home at 1211 Sharlo Ave. On 07/12/02, Mrs. Pamela Kinamore was abducted from her home at 8338 Briarwood Place. Her body was later found in a wooded area near the Whiskey Bay exit from Interstate 10. All three deaths were determined to be homicides with some sexual assault involved as well. Items taken from Gina Green's residence by the perpetrator were found behind the Ready-Portion Meat Company in the 1500 block of Choctaw Dr. The investigations into the three murders yielded evidence left at the crime scenes from which LSP Crime Lab Technicians were able to obtain the suspect's DNA profiles. The LSP Crime Lab technicians further determined that the DNA profiles from the three different crime scenes belonged to the same unknown male suspect.
>
> Following this finding, a multi-agency task force was formed and a "tip-line" was set up to handle the multitude of callers with information. To this date, more than 5,000 "tips" have been received by the task force investigators suggesting investigators "check out" various white males for various reasons. Many of these tips are anonymous out of the callers' concerns about reprisals. More than 600 white males have been contacted for the purpose of obtaining oral saliva swabs for DNA comparison. Out of that number, less than 15 have refused the voluntary submittal, the overwhelming majority being more than eager to be formally eliminated from suspicion.
>
> Two "tips" were received from different persons regarding the subject Kohler as a possible person who needed to be checked. Background investigation of Kohler revealed that he is a convicted felon—from a burglary charge in 1982. He was last employed as a

4

that the warrant affidavit failed to provide any information as to the identity or credibility of the tipsters, their reasons for believing Kohler should be checked, or that the tips were corroborated in some way. Second, the rest of the information in the affidavit – that regarding Kohler's burglary conviction, employment status, his past employment with a company with a secondary shop on a road where items belonging to one of the victims were found, and refusal to voluntarily submit to a saliva swab – did not establish probable cause.[16] Finally, the Fifth Circuit noted that even if the affidavit was considered in conjunction with the FBI profile, the FBI profile traits were "so generalized in nature that hundreds, if not thousands, of men in the Baton Rouge area could have possessed them, and they are, therefore, insufficient to warrant the belief that Kohler was the serial killer."[17]

Detective Johnson argues that he is entitled to qualified immunity on plaintiff's *Malley* claim. He submits that a reasonably trained police officer would not have known that the warrant affidavit submitted to Judge Anderson failed to establish probable cause. Detective Johnson asserts that the fact Kohler was unemployed was important

---

welder for a fabrication company headquartered on Old Perkins Rd. and with another shop of Choctaw Dr., and he was occasionally sent out of town on contracted work. Kohler was contacted on two occasions in October by an investigator with the task force. He told this investigator that he was currently unemployed. When asked to consent to a voluntary saliva swab, Kohler requested time to think it over. Two weeks later, when contacted again by the investigator, he flatly refused to voluntarily provide a saliva swab. The investigator contacted Kohler a few weeks later by phone and asked again if Kohler would provide a swab. He refused.

[16] As the Fifth Circuit explained:
> Detective Johnson's affidavit provides no explanation as to how Kohler's twenty-year old burglary conviction gives rise to a fair probability that he was the serial killer. Likewise, the affidavit contains no information explaining the relevance of Kohler's employment status to the rape-murders. Finally, the fact that Kohler had worked for a company with a shop on the road where officers discovered a cell phone belonging to one of the victims does not link Kohler to the serial killings, given that the affidavit provides no indication that Kohler ever worked at the Choctaw Drive shop or that the shop was located anywhere near the 1500 block of Choctaw Drive, where the victim's cell phone was found.

[17] Mandate, doc. 34, page 11.

because it would have given plaintiff the opportunity to be mobile and would have caused him to have tight finances. Johnson states that the fact the plaintiff had once been employed on Choctaw Drive served to demonstrate "that the plaintiff was familiar with a geographical location where property of one of the victims was discovered, a fact important to an experienced homicide detective."[18] While Detective Johnson spends some time in his motion for summary judgment explaining the significance of the above information included in the warrant affidavit, the Detective did not include this significance in his warrant affidavit. Therefore, such significance was not made known to Judge Anderson. Additionally, defendant highlights the fact that Judge Anderson was satisfied that the affidavit established probable cause because the Judge did, after all, issue the warrant. As Detective Johnson concludes:

> Given that two (2) experienced judges (Hon. Richard Anderson and Hon. James Brady) have found the affidavit to have established probable cause for the seizure of Mr. Kohler's DNA, it cannot be fairly concluded that Det. Johnson, a non-lawyer, would have known that the affidavit he submitted to procure the seizure warrant was so lacking in indicia of probable cause as to render official belief in its existence unreasonable.[19]

Although Detective Johnson asserts that the fact Judge Anderson found the affidavit sufficient to establish probable cause should weigh in favor of his immunity, the Supreme Court found that the fact of issuance by a magistrate should not, in itself, be sufficient to shield the affiant from liability. As the Court explained:

> [I]t goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held

---

[18] Doc. 55-3, page 7.
[19] *Id*., page 16. This Court notes that it did not find the warrant affidavit, by itself, to establish probable cause. Instead, we held that the affidavit in conjunction with the FBI profile served to establish probable cause. *See* doc. 22, page 9.

6

>   liable. But it is different if no officer of reasonable competence would have requested the warrant, *i.e.*, his request is outside the range of the professional competence expected of an officer. If the magistrate issues the warrant in such a case, his action is not just a reasonable mistake, but an unacceptable error or neglect of duty. The officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate.[20]

In opposition, Mr. Kohler argues that a reasonable officer in Detective Johnson's position would have known that the affidavit was facially invalid. Plaintiff points out that the law regarding corroboration of informants is well-settled, as is the law that an officer has an obligation to be completely truthful. Plaintiff cites the Louisiana Supreme Court's decision in *State v. Lee*,[21] in which the court found a subpoena duces tecum unconstitutional based, in part, on its failure to provide information as to the source's credibility or connection to the defendant. Mr. Kohler argues that Detective Johnson knew of and failed to include exculpatory information in the warrant affidavit. As Mr. Kohler concludes:

>   One must believe that if any magistrate had been told Johnson knew Shannon Kohler's foot size cleared him as the murderer, that his 20 year old simple burglary conviction had been followed by a full pardon and spotless record, and Johnson had no knowledge of the informant's credibility, he would have rejected the warrant application. There is no reason to believe a reasonably well trained officer **in Johnson's position** would have submitted the affidavit to a judge.[22]

---

[20] 475 U.S. 335, 346 n. 9 (1986).

[21] 973 So.2d 109, 127 (La. 2008). The court notes that *State v. Lee* was decided *after* the submission of the warrant affidavit in this case and therefore cannot directly serve as the basis for concluding that the law on corroboration of informants was well-settled at the time of the warrant affidavit. However, the requirement of corroboration was settled by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 244-245 (1983) ("It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting hearsay." (quoting *Jones v. United States*, 362 U.S., 257 at 269, 271 (1960)) as well as by the Louisiana Supreme Court in *State v. Williams*, 338 So.2d 1365, 1369 (La. 1976) (affidavit that did not attest to credibility of informant or basis for informant's conclusions could not support issuance of warrant).

[22] Doc. 58-2, page 7.

7

Although the affidavit failed to establish the tipsters' credibility, it did set forth that many tips provided to the "tip line" were from anonymous callers and that two *different* individuals had called about Kohler. Additionally, the affidavit highlighted that Kohler was one of the few individuals who refused to voluntarily submit to a saliva test. However, plaintiff is correct that Detective Johnson clearly should have included information regarding plaintiff's pardon from the burglary conviction and shoe size.

The Fifth Circuit Mandate makes it plain that the issues on remand are limited to the information presented to Judge Anderson. Detective Johnson's explanation as to the significance of the information included in the affidavit was not presented to Judge Anderson and is immaterial. Under *Malley*, Detective Johnson cannot escape liability based on the probable cause determination by Judge Anderson. Further, the warrant affidavit failed to include clearly relevant information regarding plaintiff's burglary conviction and shoe size. Indeed, when analyzed without the benefit of the FBI profile or Detective Johnson's after-the-fact explanations as to the relevance of the information included in the warrant affidavit, the affidavit is devoid of any basis that would support a finding of probable cause. The two anonymous tips must be discounted based on the lack of corroboration. The other information included in the warrant affidavit fails to connect plaintiff to the crimes in any way. This Court finds that from an objective standpoint, a reasonably competent officer would have known "that his affidavit failed to establish probable cause and that he should not have applied for the warrant."[23] This Court finds that the warrant affidavit in this case is "so lacking in indicia of probable

---

[23] *Malley*, 475 U.S. 335, 345 (1986).

cause as to render official belief in its existence unreasonable."[24] Therefore, this Court concludes that Detective Johnson is not entitled to qualified immunity.

## Conclusion

Based on the above analysis, this Court DENIES defendant's motion for summary judgment (doc. 55) and GRANTS plaintiff's motion for summary judgment (doc. 58).

Signed in Baton Rouge, Louisiana, on June 3, 2009.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[24] *Id*.